HAMBURGER BROTHERS & Co., INC., tercerista y apelante, *v.* LUIS F. DÍAZ LLENZA, sustituído por ENRIQUE CATONI LANDRÓN, demandante y apelado, y HAMBURGER BROTHERS & Co., demandada.

Núm. 7827.—*Sometido:* Junio 2, 1939. *Resuelto:* Julio 22, 1939.

*Francisco González Fagundo*, abogado de la apelante; *Luis Pereyó*, abogado del apelado.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

El 4 de octubre de 1934 el Secretario de la Corte de Distrito de Humacao libró orden de ejecución al márshal de la misma por mandato del juez para satisfacer la sentencia por $633.97 dictada a favor de L. F. Díaz subrogado por E. Catoni en el pleito que sobre indemnización de daños y perjuicios siguiera en la expresada corte contra Hamburger Bros. & Co., y en cumplimiento de la misma el márshal al día siguiente embargó un automóvil que depositó en la persona de Juan Jiménez, certificando además dicho funcionario que tres días después o sea el 8 de octubre de 1934 le fué presentado por A. Sierra como agente de Hamburger Bros. Co., Inc., un juramento reclamando como suyo el automóvil embargado para cuya entrega exigió una fianza por mil trescientos dólares o sea el doble del precio en que había sido el auto tasado prestando dicha fianza E. Gómez y J. M. Rocafort y ordenando en su consecuencia la entrega del auto a Sierra.

Archivados esos documentos, el secretario de la corte en 15 de octubre de 1934 hizo constar haber notificado a las partes que se había presentado por Hamburger Brothers Co., Inc., el escrito de buena fe que la ley sobre tercería ordena, reclamando como suyo el auto embargado, acompañado de la fianza para su entrega.

En octubre 26 compareció Catoni, el demandado en tercería, y en noviembre 17, 1934, Hamburger Brothers & Co., Inc., radicó su demanda de tercería alegando ser una corporación constituída de acuerdo con las leyes de los Estados Unidos y registrada en la Secretaría Ejecutiva de Puerto Rico, que el automóvil embargado era de su exclusiva propiedad y en ningún momento había pertenecido a Hamburger Brothers & Co. que era una entidad distinta, y que nada debía a Díaz o a Catoni, ni tenían ellos ni habían tenido sentencia o reclamación alguna en su contra.

Contestó el demandado Catoni negando que la tercerista fuera dueña del automóvil en cuestión y alegando como defensa especial que Hamburger Brothers & Co. estuvo haciendo negocios en Puerto Rico sin estar autorizada por el Secretario Ejecutivo de la Isla y traspasó todo su activo a la tercerista siendo ambas una misma persona, o corporación administrada por las mismas personas, y que el automóvil embargado era de la propiedad de Hamburger Brothers & Co. y así estuvo inscrito en el Departamento de Automóviles hasta la fecha del embargo.

Fué el pleito a juicio y la corte lo resolvió por la siguiente sentencia dictada el dos de marzo de 1938:

"Habiéndose demostrado en el juicio de este caso que los negocios de Hamburger Brothers & Co. fueron traspasados a Hamburger Brothers & Co., Inc., la tercerista en este caso, la cual se hizo cargo totalmente del activo y el pasivo de la anterior, se declara sin lugar la tercería interpuesta en este caso, imponiéndose a los terceristas las costas en el procedimiento, así como una cantidad de $100.00 que se estima razonable como honorarios de abogado del demandado comparecido en autos."

No conforme la tercerista, apeló, señalando en su alegato tres errores cometidos a su juicio por la corte al estimar que por el solo hecho de que Hamburger Bros. & Co., Inc., se hiciera cargo del activo y pasivo de Hamburger Bros. & Co. debió declararse sin lugar la tercería interpuesta; al permitir que el testigo Arsenio Sierra fuera examinado acerca de sus relaciones con Hamburger Bros. & Co. mientras declaraba' como testigo de la tercerista, y al actuar en contra de la ley que regula el procedimiento de tercería.

Los dos primeros señalamientos se argumentan conjuntamente.

La tercerista comenzó su prueba presentando la licencia expedida a su nombre del automóvil embargado. Luego introdujo al testigo Arsenio Sierra. Ésa fué toda la evidencia aportada en el pleito, pues la parte demandada ninguna otra introdujo, limitándose a descansar en la docu-

mentación relativa al embargo. Precisa, pues, conocer lo que declaró y cómo se interrogó al testigo para resolver si se cometieron o no los errores señalados.

Dijo Sierra:

"P. ¿Cómo se llama el testigo?

"R. Arsenio Sierra.

"P. ¿A qué se dedica?

"R. A negocios de tabaco.

"P. ¿Trabaja para alguna compañía?

"R. Trabajo para la Corporación Hamburger Bros. & Co., Inc.

"P. ¿Ud. sabe si esta corporación, allá para el mes de octubre era dueña de algún automóvil?

"R. Sí, señor.

"P. ¿De qué carro?

"R. De un carro Buick, licencia 677.

"P. ¿A quién le compraron ese carro?

"R. A Figueroa y Gautier.

"P. ¿En la fecha en que le fué embargado ese carro, en poder de quién estaba?

"R. De Hamburger Bros. & Co., Inc.

"P. ¿En alguna ocasión ese carro ha sido de Harmburger Bros. & Co.?

"R. Nunca.

"P. ¿Ni ha estado nunca en posesión de Hamburger Bros. & Co.?

"R. Nunca.

"P. ¿Siempre ha estado bajo la posesión de Hamburger Bros. Co., Inc.?

"R. Sí, señor, Incorporada.

"P. ¿Quién pagó eso?

"R. Hamburger Bros. & Co., Inc.

"P. ¿Y quién lo compró?

"R. Arsenio Sierra.

"P. ¿En alguna ocasión ese carro ha estado inscrito a nombre de Hamburger Bros. & Co.?

"R. Nunca.

"P. ¿Quién atiende a los gastos y sostenimiento de ese carro desde la fecha en que fué comprado?

"R. La Corporación.

"P. ¿Qué corporación?

"R. Harmburger Bros. & Co., Inc.

"P. ¿Ud. sabe si esa Corporación que Ud. representa le debía alguna cantidad a Luis F. Díaz Llenza?

"R. No, señor.

"P. ¿Y a Enrique Catoni?

"R. No, señor.

"P. ¿Ud. sabe si hay alguna sentencia dictada contra esa Corporación?

"R. No, señor.

"P. ¿A favor de alguna de estas personas que yo he nombrado?

"R. En Puerto Rico ninguna.

"Nada más.

"Demandante.

"P. ¿Cuándo fué que adquirió Ud. ese carro para su representada, en qué fecha?

"R. En el mes de marzo.

"P. ¿En el mes de mayo?

"R. De marzo de 1934.

"P. ¿Qué es Ud. de la Corporación Hamburger Bros. & Co., Inc.?

"R. Representante.

"* 　 * 　 * 　 * 　 * 　 * 　 *

"P. ¿Ud. conoció a la compañía Hamburger Bros. & Co.?

"R. La conocí.

"P. ¿Con qué motivo vino Ud. en conocimiento de esa compañía?

"R. Estuve primero colocado con Hamburger Bros. & Co.

"P. ¿Qué era Ud. de Hamburger Bros. & Co?

"Tercerista: Para oponerme, entiendo que eso lo podría probar más tarde el compañero cuando lo utilice como testigo de él.

"Juez: No, porque ha declarado sobre ambas compañías.

"Demandante: Él ha declarado sobre ambas compañías.

"Tercerista: Lo ha declarado a preguntas mías.

"Juez: Él puede declarar.

"Tercerista: Respetuosamente tomamos excepción porque entendemos que el compañero está tratando de probar su caso con nuestro testigo.

"Demandante.

"P. ¿Qué era Ud. de Hamburger Bros. & Co.?

"R. Representante.

"P. ¿*Manager*?

"R. Sí, señor.

"P.   ¿Qué personas componían a Hamburger Bros. & Co.?

"R.   Que componía, yo conocí solamente a Hamburger.

"Juez.

"P.   ¿Cómo?

"R.   Yo conocí solamente a Hamburger.

"P.   ¿Qué es ese Hamburger?

"R.   Benjamín Hamburger.

"P.   ¿Qué era Ud. de Benjamín Hamburger aquí en Puerto Rico?

"R.   De él nada, de la sociedad.

"P.   ¿Qué era Ud. de la sociedad entonces?

"R.   *Manager* de la sociedad.

"  *          *          *          *          *          *          *

"P.   ¿El apoderado para actuar a nombre de Hamburger Brothers & Co.?

"R.   Sí, señor.

"P.   ¿Ese poder quién se lo dió a Ud.?

"R.   La firma de Hamburger Bros. Co.

"P.   Mire ese poder que yo le presento.

"Tercerista: Sr. Juez, yo no quiero estar molestando a la Corte con oposiciones, que se entienda mi oposición a todo este interrogatorio por entender que es inmaterial, impertinente en este estado del procedimiento y que se anote mi excepción.

"Juez: Muy bien, como si se presentara la objeción, recayendo igual resolución de tomarse la misma excepción.

"Demandante.

"P.   ¿Ése es el poder que le dió a Ud. Luis Hamburger para actuar?

"R.   Luis Hamburger no.

"P.   ¿Benjamín Hamburger, para actuar a nombre de Hamburger Bros. and Co.?

"R.   Sí, señor.

*          *          *          *          *          *          *

"P.   ¿Quiénes son las personas que han incorporado a la corporación Hamburger Bros. & Co., Inc.?

"Tercerista: La mejor prueba sería una certificación de la incorporación.

"Demandante: Está aquí pero yo quiero preguntarle a él porque él lo sabe, porque él es *Manager* de la corporación.

"Juez: Se admite la pregunta.

"Tercerista: Nosotros respetuosamente tomamos excepción de la resolución de la Corte.

"R.   Yo no conozco nada más que uno.

"Demandante.

"P.  ¿Quién es ese uno?

"R.  Benjamín Hamburger.

"P.  ¿Qué es Benjamín Hamburger de la Corporación Hamburger Bros. & Co., Inc.?

"R.  El Presidente.

❋    ❋    ❋    ❋    ❋    ❋    ❋

"P.  ¿Y esa misma persona es la persona que era presidente o dueño de Hamburger Bros. & Co.?

"R.  Sí, señor.

"P.  ¿Es la misma persona?

"R.  Sí, señor, pero cambiaron la entidad.

"P.  ¿De manera que esta misma persona que es Presidente de la Corporación es el que era y le dió a Ud. poder para actuar en Hamburger Bros. & Co.?

"R.  A mí me dió la Corporación en general, no Benjamín.

"Juez.

"P.  ¿Dígame, señor, la entidad anterior, la entidad primera nombrada Hamburger Bros. & Co. existe todavía?

"R.  No, señor.

"P.  ¿Por qué no existe si Ud. lo sabe?

"R.  Recesó el negocio de Hamburger Bros. & Co. en el año 1933.

"P.  ¿En virtud de qué cesaron?

"R.  De que formaron corporación ellos.

"P.  ¿Entonces se disolvió la sociedad?

"R.  Se disolvió la sociedad por común acuerdo.

"P.  ¿Por común acuerdo de sus socios?

"R.  Sí, señor.

"P.  ¿Cómo se liquidó esa sociedad?

"R.  En la forma de liquidarse, yo no estoy seguro de la forma de liquidarse cómo se hizo una Corporación.

"P.  ¿Quién se hizo cargo del negocio y del capital?

"R.  La Corporación.

"P.  ¿La Corporación se hizo cargo de todo el capital?

"R.  Sí, señor.

"P.  ¿Incluyendo el pasivo, desde luego?

"R.  Sí, señor.

❋    ❋    ❋    ❋    ❋    ❋    ❋

"P.  Contésteme una pregunta que le voy a hacer, si Ud. lo sabe por ser *Manager* de esta Corporación, ¿la cantidad o la deuda, o lo que fuese, la reclamación mejor dicho por la cual se embargó ese

automóvil era una responsabilidad contraída directamente por la Corporación o venía de la entidad anterior?

"R.   Era de la entidad anterior.

"Tercerista.

"P.   ¿Ud. sabe si Hamburger Bros. & Co., Inc. se hizo cargo al pago de esa sentencia de Hamburger Bros.?

"R.   No, señor.

"P.   ¿Nunca?

"R.   No, señor.

"P.   ¿A Ud. le consta de propio conocimiento?

"R.   Sí, señor."

No creemos que se errara de modo manifiesto en la manera como se condujo el interrogatorio.   A nuestro juicio la parte demandada pudo repreguntar al testigo en la forma en que lo hizo sin tener que presentarlo como su propio testigo, ya que las repreguntas fueron la consecuencia lógica de las preguntas.

Es en cuanto al resultado de la prueba que tenemos duda. No se demostró de modo alguno que el automóvil embargado fuera a la fecha del embargo de Hamburger Bros. & Co. ni que estuviera inscrito a su nombre como se alegó en su contestación por Catoni.   Por el contrario la tercerista probó que el automóvil estaba registrado a su nombre cuando fué embargado.

De las diligencias de embargo surge la verdad de la sentencia dictada a favor de Catoni y en contra de Hamburger Bros. & Co.   Y de la declaración de Sierra consta la íntima relación existente entre esa entidad y la corporación tercerista.   Sabemos que la tercerista es una corporación.   No se conoce con exactitud qué era Hamburger Bros. & Co. Una misma persona, Benjamín Hamburger, fué su Presidente y es Presidente de la tercerista.   Al disolverse Hamburger Bros. & Co. la tercerista se hizo cargo de la liquidación, del activo y del pasivo, sin que se conozcan con exactitud los términos del contrato.   No se trata aquí de un pleito en cobro de sentencia seguido contra la tercerista como liquidadora.   Se trata de un automóvil embargado directamente

para el cobro de una sentencia contra Hamburger Bros. &
Co., en liquidación, habiéndose practicado el embargo desig-
nándose el automóvil como propiedad perteneciente al deudor
y sobre esto en verdad la prueba falla en absoluto, existiendo
por el contrario evidencia demostrativa de que el dicho auto-
móvil es y era a la fecha del embargo propiedad de la terce-
rista sin que exista el más leve dato que indique dentro de
la evidencia que el automóvil fuera primitivamente de Ham-
burger Bros. & Co. y pasara de ella a la posesión de la
tercerista.

Quizá se trate de una sentencia justa, pero no estando
como no está sostenida por la prueba, no puede quedar en
pie.

Habiendo llegado a esa conclusión, no es necesario que
examinemos el tercero de los errores señalados. *Por la exis-
tencia del primero debe declararse el recurso con lugar,
revocarse la sentencia apelada y dictarse otra reconociendo
el derecho de la tercerista al automóvil en cuestión y en su
consecuencia declarando nulo el embargo, con las costas al
demandado, sin honorarios de abogado.*

El Juez Asociado Sr. Travieso no intervino.